

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| vs. | §  Criminal Action No.: 4:18-01129-MGL |
| | § |
| TONY DEWAYNE ROLLINS | § |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO SUPPRESS**

## I.   INTRODUCTION

The Government charged Defendant Tony Dewayne Rollins (Rollins) in a one-count indictment for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). Pending before the Court are Rollins's motions to suppress the firearm and ammunition discovered during the search as well as his incriminating statements made to police shortly thereafter (motions to suppress). Rollins is represented by counsel. Having carefully considered both motions, the response, the supplemental response, oral argument, the record, and the applicable law, it is the judgment of the Court Rollins's motions to suppress will be granted.

## II.   PROCEDURAL HISTORY

This case arises out of a search and seizure of a residence where Rollins was located on November 8, 2018. In his motions to suppress, Rollins argues (1) it was unlawful for the police to

open the door to the residence and (2) Rollins's subsequent statements were made subsequent to his unconstitutional arrest and in violation of *Miranda*. *See* ECF Nos. 36, 45.

On December 18, 2018, the Government filed a one-count indictment against Rollins, ECF No. 1, charging him with violations of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e) for being a felon in possession of a firearm and ammunition. On April 2, 2019, Rollins filed his first motion to suppress, in which he asked this Court to suppress the physical evidence discovered during the allegedly unlawful search and the subsequent statements Rollins made to police. ECF No. 36. On June 4, 2019, the Government filed its response in opposition. ECF No. 44. On June 26, 2019, Rollins filed his second motion to suppress, in which he included additional argument regarding the alleged *Miranda* violation. ECF No. 45. On July 9, 2019, the Court held a hearing on both motions to suppress and took the matter under advisement pending supplemental briefing from the Government, which the Government submitted on August 22, 2019. ECF No. 54.

## III. FINDINGS OF FACT

The Court determines the following facts by a preponderance of the evidence. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence." (citation omitted)); *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005) ("In the course of deciding a motion to suppress, the district court may make findings of fact. . . .").

On November 8, 2018, Officers Parker and Reynolds of the Myrtle Beach Police Department responded to an "open-line" 911 call from a residence located at 1400 Fischer Drive, Apartment 102-C, Myrtle Beach, South Carolina. ECF No. 54 at 2. An "open-line" 911 call is one in which the caller fails to respond when the dispatcher answers the call, but the call remains

open and the dispatcher can hear noise in the room or area. Transcript at 6. During the call, dispatch heard a male and female in the background, and heard the female say, "Get out of my house" several times. *Id*.

Officers Parker and Reynolds arrived at the residence several minutes after the 911 call and upon approaching the front door, they observed it was "ajar". *Id*. at 28. At the suppression hearing, Parker testified "ajar" meant "[the door] was not latched" but she and Reynolds could not see into the residence as they approached. *Id* at 28, 48. Reynolds knocked on the door, waited approximately 14 seconds, and knocked again. Reynolds Body Worn Camera (BWC) at 20:29:14. According to Reynolds, he was "trying to…make sure there [was] no one inside the [apartment] that could still be in danger…I know from earlier that there [was] a female inside and she was telling someone to get out. And I want[ed] to make sure that whoever that was[,] was not still in there and whoever the female was[,] [was] not injured." Transcript at 39-40.

When Reynolds knocked a second time, he knocked with such force he opened the door to the apartment at the same time Ms. Tameka Johnson (Johnson) appeared. Reynolds BWC at 20:29:29. As Johnson appeared, Reynolds announced it was the police and Johnson almost immediately said, "Everything okay, I guess." *Id*. at 20:29:39. The officers asked her to come outside and talk to them and asked if they could enter the residence. *Id*. at 20:29:45. Johnson denied both officers' requests to enter the residence. Transcript at 29, 47. Parker, who began talking to Johnson when she came out of the residence, testified Johnson was not bruised, bloody, or trembling in fear. *Id*. at 30. Parker testified that at this point, she did not know if Johnson was the instigator or the victim, or anything else about what happened. *Id*. Parker also testified that as of this time, both officers had no reason to suspect any firearm was involved in the incident. *Id*. at 31.

3

While Parker was speaking to Johnson, Reynolds was still standing at the door of the residence. As the door was closing under its own power following his forceful second knock, Reynolds put his boot in the doorjamb to keep the door open and crossed the threshold into the residence. Parker BWC at 02:10:40-02:11:10. According to Reynolds, he "open[ed] the door…[and] shine[d] [his flashlight] inside" so that he could see into the residence. Transcript at 51. After Reynolds shined his flashlight into the residence, he observed a bullet laying on the floor of the living room. Parker BWC at 02:11:44. Rollins then came to the door and followed Reynolds's instruction to walk outside.

After Rollins came outside, Parker told Johnson to show her where the gun was. Parker BWC at 02:12:40. Parker then followed Johnson to a bedroom, where Johnson located a firearm in the dresser. *Id*. at 02:13:12. At no point did either officer receive consent to enter the residence after Johnson had initially told them they could not enter. Reynolds, who was outside with Rollins while Parker was attempting to locate the gun, asked Rollins to tell him the location of the gun. Rollins replied, "What gun? I ain't got no gun. What gun? I don't know nothing about no gun." Reynolds BWC at 20:32:40.

After the gun was discovered, Rollins told Reynolds, "It wasn't cocked. She must have cocked it." Reynolds BWC 20:37:44. A few moments later, while handcuffed and seated on the ground outside of the residence, Rollins told the officers he got the gun "from the projects." *Id*. at 20:43:01.

## IV. DISCUSSION AND ANALYSIS

In Rollins's motions to suppress, he seeks to suppress the firearm and ammunition law enforcement discovered as a result of their search of the residence and the subsequent statements

4

he made to police before he was given his Miranda warnings. The Court will address each argument in turn.

## A. Search and Seizure

Rollins contends law enforcement violated his Fourth Amendment rights when Reynolds pushed the door open and stuck his flashlight inside. First Motion to Suppress at 5. "It is 'a basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573 (1980). The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Id*. at 585. For that reason, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Id.* at 586. The presumption of unconstitutionality that accompanies "the [warrantless] entry into a home to conduct a search or make an arrest" may be overcome only by showing "consent or exigent circumstances." *Steagald v. United States*, 451 U.S. 204, 211 (1981).

The exigent circumstances exception has been extended to various circumstances where law enforcement officers are responding to an emergency and there is a "compelling need for official action and no time to secure a warrant." *Michigan v. Tyler*, 436 U.S. 499, 509 (1978). At least one other circuit has held domestic violence cases do not "create a *per se* exigent need for warrantless entry." *United States v. Brooks*, 367 F.3d 1128, 1136 (9th Cir. 2004). An officer's conjecture about the possibility of future harm has also been held to be insufficient to establish exigent circumstances. *See United States v. Struckman*, 603 F.3d 731, 744 (9th Cir. 2010). Rather, in order to justify a search on these grounds, the officer must point to specific and articulable facts demonstrating the harm is imminent. *Id*. at 743. In this case, there are no such facts the Government can identify that would indicate harm was imminent.

Another exception to the warrant requirement is the community caretaker exception. "The community caretaking function recognizes that police sometimes take actions not for any criminal law enforcement purpose but rather to protect members of the public[, and] searches (including home entries) conducted for the latter purpose are deemed exempt from the Fourth Amendment warrant requirement. *Sutterfield v. City of Milwaukee*, 751 F.3d 542 (7th Cir. 2014). The Fourth Circuit adopted this exception in *Hunsberger v. Wood*, 570 F.3d 546, 553 (4th Cir. 2009).

When Reynolds pushed the door open and looked inside with his flashlight, he went further than the Fourth Amendment allows. Johnson had expressly denied consent to enter the residence. Contrary to the Government's position, the exigent circumstances and community caretaker exceptions do not apply in this case. Johnson came to the door upon Reynolds's second knock. As both officers testified, she did not exhibit any signs of distress or suggest there had been a physical altercation. There was no evidence anyone else was in distress or that the events giving rise to the phone call were anything more than an argument about "stupid stuff" as Johnson herself told Parker shortly thereafter. There was no evidence to suggest this was a domestic violence call as the Government insists in its supplemental brief. Both officers also testified that as of this time, they had no reason to believe there was a weapon involved in the incident. Most importantly, Johnson was safe and outside of the residence.

The officers also never gave Johnson the opportunity to explain the circumstances of the 911 call. As Parker coaxed Johnson away from the door after Johnson denied the officers request for consent to enter, Reynolds opened the closed door again and shined his flashlight inside. When Johnson saw Reynolds attempting to look inside the apartment, she tried to go over to him and stop him from going inside.

Law enforcement had no reason to believe from the 911 call a firearm was present or involved in the incident. Law enforcement could not see the bullet on the floor until Reynolds unconstitutionally opened the door to the residence. Without the unlawful intrusion into the residence, the police would not have had any justification to enter the apartment without a warrant. Therefore, the Court will grant Rollins's motion to suppress the firearm and ammunition discovered as a result of the unconstitutional search.

B.   **Subsequent Statements Made to Law Enforcement**

Rollins claims the two statements he made to law enforcement after he had been put in handcuffs should be suppressed because (1) there was no break in the causal connection between the unconstitutional arrest and Rollins's statements and (2) the officers violated Rollins's *Miranda* rights. Because this Court concludes Rollins's statements should be suppressed because there was no break in the causal connection between the unconstitutional arrest and Rollins's statements, the Court will grant Rollins's motion to suppress on this ground and decline to reach his *Miranda* argument.

When a defendant demonstrates his Fourth Amendment rights have been violated and there is a factual nexus between the illegality and the challenged evidence such that the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct, the evidence in question may be tainted and therefore, subject to suppression. *See United States v. Watson*, 703 F.3d 684, 696-97 (4th Cir. 2013). "The determination whether there was a 'break' in the causal chain between an unlawful arrest and a defendant's incriminating statement depends on the facts of each specific case." *Id*. at 697. In analyzing the admissibility of such a statement, the Fourth Circuit considers several factors, "including: (1) the 'the purpose and flagrancy of the official misconduct'; (2) whether Miranda warnings were given to the defendant; (3) the 'temporal

7

proximity of the arrest and the confession,' and (4) the presence of intervening circumstances."
*Id*.

The first factor weighs in favor of the Government because the official misconduct in this case was not flagrant and does not appear to be purposeful. The second factor weighs in favor of suppressing the statement because Rollins was not given his *Miranda* warnings prior to make the statements. With respect to the third factor, like the defendant in *Watson*, Rollins was not released from detention arising out of the illegal search before making his incriminating statements. *See Watson*, 703 F.3d at 697. There was no break in the causal connection between the unconstitutional arrest and Rollins's statements. There also were no intervening circumstances because the statements followed soon after Reynolds placed Rollins in handcuffs. Johnson clearly told law enforcement they did not have consent to enter the residence. In spite of Johnson's instruction, Reynolds entered the apartment. If Reynolds had not committed this unconstitutional act, Rollins would not have been placed in handcuffs shortly thereafter, and his statements flowed directly from his arrest. Therefore, the Court will grant Rollins's motion to suppress the statements he gave to law enforcement after he was detained.

## V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Rollins's motions to suppress are **GRANTED.**

**IT IS SO ORDERED.**

Signed this 11th day of September, 2019, in Columbia, South Carolina.

                                                            s/ Mary Geiger Lewis
                                                            MARY GEIGER LEWIS
                                                            UNITED STATES DISTRICT JUDGE